| BROOKE HARVEY, individually and on behalf of all others similarly situated,<br><br>v.<br><br>COMMUNITY HEALTH NETWORK, INC. | Case No. 1:22-cv-00659-RLM-MJD<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action<br><br>Judge Robert L. Miller, Jr.<br><br>Magistrate Judge Mark J. Dinsmore |
| --- | --- |

**HARVEY'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

## I.   INTRODUCTION

The Parties have agreed to settle these claims on a class basis, pursuant to Federal Rule of Civil Procedure 23, and a collective basis, under the Fair Labor Standards Act 29 U.S.C. § 201 et. seq. (the "FLSA"), § 216(b)[1], for the Gross Settlement Amount listed in the Settlement Agreement (**Exhibit A**), which is the maximum total gross settlement inclusive of attorney's fees, litigation costs, claims administration expenses, and a general release payment to Harvey.  The settlement is the result of extensive arms' length negotiations between the Parties, including mediation before an experienced class/collective action mediator, Carole Katz, Esq.

As discussed herein, the settlement meets all the criteria for preliminary approval. To effectuate the settlement and distribute funds to settlement class members, the Parties request that the Court: (1) preliminarily approve the Settlement Agreement; (2) certify the proposed class for settlement purposes only; (3) sign the proposed Preliminary Approval Order; (4) approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement (**Exhibit B**); and (5) set a date for a final approval hearing approximately 75 days after the order

---

[1] In the Motion for Final Approval, the Parties will further address why this settlement is also fair and reasonable under the FLSA.

granting Preliminary Approval is entered.

## II.    STATEMENT OF FACTS

### A.  <u>Summary</u>

Harvey requests that the Court approve the settlement reached in this matter involving claims under the FLSA and Indiana law. The Settlement Agreement represents the Parties' investigation and ultimate resolution of the disputed claims. The Settlement Agreement completely resolves Harvey's and the proposed collective/class members' claims at issue in this lawsuit.  The Parties' Settlement Agreement provides Harvey and the proposed collective/class with a reasonable recovery in light of the risks inherent of litigation and trial. Community Health denies any wrongdoing, the violation of any federal or state wage and hour law, and any damages claimed. For these reasons, settlement of this matter is in the best interest of Harvey and the proposed collective/class members.

### B.  <u>Procedural And Litigation History</u>

This action, which began on April 1, 2022, is a hybrid wage and hour collective action under the FLSA and class action under the Indiana Wage Payment Statute, I.C. § 22-2-5 *et seq.*, against Community Health Network, Inc. ("Community Health"). *See* ECF No. 27 (the "Amended Complaint"). To track time, calculate overtime and process payroll for its non-exempt employees, Community Health used Kronos, a cloud-based timekeeping and payroll system.  On or around December 11, 2021, the Kronos cloud system became inoperable, purportedly caused by a cyberattack. As a result of such Kronos outage, Community Health was unable to access any timekeeping or payroll data stored or entered into the Kronos system affecting four bi-weekly pay periods from December 12, 2021, to January 25, 2022 ("Kronos Outage").  During that time, Harvey

alleges that some employees were not timely paid all wages, while some employees were overpaid wages.

Community Health asserts that it acted in good faith at all times following the Kronos Outage, including the timely institution of back-up manual and electronic timekeeping processes, and that after the Kronos system was restored, Community Health reconciled and paid all unpaid wages and overtime compensation related to the five bi-weekly pay periods at issue by April 22, 2022. As a result of this reconciliation process, it was determined that during the Kronos Outage, Community Health underpaid wages to 7,680 non-exempt employees in the aggregate amount of $6.1M and overpaid wages to 4,620 non-exempt employees in the aggregate amount of $8.5M. Following the conclusion of the Kronos Outage, Community Health took steps to ensure all underpaid employees received any outstanding back wages, and following its reconciliation process, Community Health issued remaining reconciliation payments to affected employees on April 22, 2022.

On December 5, 2022, after Community Health produced a significant amount of data and other information regarding the Kronos outage and Community Health's reconciliation process, the Parties participated in a full-day mediation with Carole Katz, a highly regarded mediator with significant experience in class and collective action labor and employment wage and hour litigation. The Parties were able to reach a settlement at the mediation after a full day of negotiations. Since that time, after substantial further work and negotiations on the settlement terms, the Parties were able to reach a final Settlement Agreement.

The Parties recognize and acknowledge the benefits of settling this case and the risks of not settling this case. Harvey believes that the claims asserted in this case have merit and that the evidence developed to date supports the claims on class/collective basis. Despite the strength of her case, Harvey is mindful of the arguments that will be raised by Community Health's able

counsel. Harvey further recognizes and acknowledges the expense and length of time that proceedings necessary to prosecute this matter as a class action against Community Health, post-trial proceedings, and any appeals would take. Harvey has taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. Harvey has, therefore, determined that the Settlement set forth in the Settlement Agreement is fair, reasonable, and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, herself and the Settlement Class and Collective. Harvey's counsel is well-versed in wage-and-hour class and collective actions and shares these opinions.

Community Health maintains that it has a number of meritorious defenses to the claims asserted in this action, including defenses to the merits, defenses to the certification of the case as a class action, defenses to conditional certification, as well as arguments for future decertification. Nevertheless, Community Health recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending a potential class action, the costs of any appeals, and the disruption to its business operations arising out of class action litigation. Accordingly, Community Health believes that the Settlement set forth in the Settlement Agreement is likewise in its best interests.

### III.    SUMMARY OF THE SETTLEMENT

The Settlement Agreement defines the Putative Rule 23 Class as:

> those current or former hourly or salaried employees of Releasees who were nonexempt under the FLSA and worked for Releasees in Indiana at any time during the Kronos Outage.

The Settlement Agreement defines the Putative FLSA Collective as:

> those current or former hourly or salaried employees of Releasees who were nonexempt under the FLSA and worked for Releasees in the United States at any time during the Kronos Outage.

There are approximately 7,680 Putative Rule 23 Class Members, who are also Putative

FLSA Collective Members.[2]

The Settlement Agreement provides for a maximum Gross Settlement Amount of $3,990,000.00, including all payments to Settlement Class and Collective Members, attorney's fees and litigation expenses, and a general release payment to Harvey (the "Gross Settlement Amount"). The Gross Settlement Amount does not include the costs of notice and claims administration of the settlement, which will be paid separately by Community Health in addition to funding the Settlement Fund. Harvey also seeks attorneys' fees not to exceed one-third of the gross settlement amount to be paid under the agreement, which is only 10.6% of the gross settlement value obtained for the class, as well as counsel's reasonable and necessary costs incurred in prosecuting this action. The Parties further agree that Harvey will receive $5,000.00 to be paid from the Gross Settlement Amount, in consideration for her work on behalf of the class and her execution of a general release of claims.

The Parties agree to enlist the services of a Settlement Administrator to administer the settlement whose services will be paid by Community Health separately from the QSF. The Settlement Administrator will send a notice of preliminary approval and settlement to each Settlement Class/Collective Member. Settlement Class Members will each be afforded 45 days after mailing of the notice to choose to opt-out or file objections and an opportunity to appear at the final approval hearing to be set by the Court and to be held at least 75 days following entry of the preliminary approval order. The amount allocated to settlement payments to the Settlement Class will be distributed as follows:

a)      First, each Claimant who is designated as "Net-Neutral" or "Net-Over" or "Net-Under-Minimal" shall be paid $40.00 from the net settlement amount.

---

[2] To release their FLSA claims, Putative Rule 23 Class members must sign, cash, or deposit their settlement check as set forth in the Settlement Agreement.

b)  Second, each Claimant who is designated as "Net-Under" shall be paid their pro-rata share of their underpaid amount as compared to the total amount of the "Net-Under" Claimants' aggregate underpayment amount.  For example, if a claimant's personal underpayment amount was 0.1% of the total "Net-Under" Claimants' aggregate underpayment amount, then that claimant shall receive 0.1% of the Net Settlement Amount as described above after the payments made in the above paragraph are applied.

Any and all claims of any Putative Rule 23 Class Member under Indiana law who does not affirmatively opt-out of the Action will be forever released against Community Health and its subsidiaries, as described more fully in the Settlement Agreement.   In addition, any Putative FLSA Collective member who signs, deposits and/or cashes their Settlement check shall be deemed an opt-in party under the FLSA, and thereby release related claims as defined in the Settlement Agreement. Further, in recognition of her receipt of the General Release Payment, any and all claims of any kind of the named Plaintiff will also be forever released against Community Health and its related entities and persons, as described more fully in the Settlement Agreement.

## IV.  PRELIMINARY CLASS CERTIFICATION, AND APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

As the Supreme Court has recognized, settlement is the principal means of resolving civil litigation in the federal courts. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 114 S. Ct. 1461, 1469 n. 22 (1994) (observing that "[l]ess than five percent of cases filed in federal court end in trial" and that "the bulk of nontrial terminations reflect settlements"). Given this reality, public policy strongly favors the pretrial settlement of class action lawsuits. *See Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969); *Fager v. Centurylink Communications, LLC, et. al.*, 2015 WL 13298517, at *3 (D.N.M. June 25, 2015), *aff'd sub nom. Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167 (10th Cir. 2016) (quoting *In re United States Oil & Gas Litig.*, 967 F2d 489, 493 (11th Cir. 1992) ("Indeed, 'public policy strongly favor[s] the pretrial settlement of class action lawsuits.'"); *Wal-Mart Stores v. Visa*

*U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Indeed, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "Although such settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Id.*

"The approval process includes two steps." *Burnett v. Conseco Life Insurance Company*, 2020 WL 4207787, at *4 (S.D. Ind. 2020) (citing *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). "First, the court conducts a preliminary review to determine whether the proposed settlement is 'within the range of possible approval' and whether there is reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Id.* "If preliminary approval is granted, the class members are notified and given an opportunity to object." *Id.* "Second, the court holds a fairness hearing to determine whether the proposed settlement is 'fair, reasonable, and adequate.'" *Id.*; Fed. R. Civ. P. 23(e)(2).

Preliminary approval of a class action settlement is thus a provisional step. At the preliminary approval stage, the Court's review is not exacting. Moreover, in evaluating a proposed settlement, "[the Court's] role at this stage of the proceeding is not to evaluate the merits of the litigation, since this would contravene the parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Applying these standards, preliminary

approval of the Settlement Agreement is warranted.

For settlement purposes only, Harvey requests, and Community Health does not oppose, that the Court certify the Class. Federal Rule of Civil Procedure 23(a) provides the procedural framework for determining whether a case should be certified as a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the representative must be typical of the claims of the class; and (4) the representative must fairly and adequately protect the interests of the class.

Furthermore, common central issues must predominate over any individual issues and the class action method of adjudicating the action must be superior to other possible methods. The Parties have stipulated, for purposes of settlement only, that a settlement class is appropriate. Community Health does not oppose Harvey's contention that each of the Rule 23 requirements for certification of a settlement class is satisfied. This includes both the Rule 23(a) elements – numerosity, commonality, typicality, and adequacy – as well as the predominance and superiority elements of Rule 23(b)(3). All of these requirements are met in this action and class certification of claims for settlement purposes is proper.

A.    This Court Should Preliminarily Approve the Settlement

1.    *The Standards for Preliminary Approval*

At the preliminary approval stage, Federal Rule of Civil Procedure 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate.

Courts also consider the following five factors: (1) the strength of the plaintiffs' case compared against the amount of the defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion

of experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal citation omitted); *Adams v. Aztar Indiana Gaming Company, LLC*, 2023 WL 2197075, at *3 (S.D. Ind. 2023).

### 2. The class representatives and class counsel have adequately represented the class.

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"). In this case, the adequacy factor is satisfied. First, Harvey's Counsel have adequately represented the interests of the putative class. Harvey's Counsel has extensive experience with complex wage and hour class and collective litigation generally, and with claims related to the Kronos Outage specifically. *See Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) (approving FLSA collective action settlement regarding Kronos outage); *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 33 (N.D. Fla. Dec. 21, 2022) (granting preliminary approval of Rule 23 class and FLSA collective action settlement regarding Kronos outage); *Stevens v. PepsiCo,, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 56 (S.D.N.Y. Dec. 2, 2022) (same); *see also Henderson v. Johnson Controls, Inc.*, No. 2:22-cv-00414-JPS, ECF No. 23 (E.D. Wis. Mar. 10, 2023) (requesting approval of FLSA collective action settlement regarding Kronos outage); *Marshall v. Coca-Cola Consolidated, Inc.*, No. 3:22-cv-00214-RJC-DSC, ECF No. 17 (W.D.N.C. Jan. 19, 2023) (requesting preliminary approval of Rule 23 class and FLSA collective action settlement regarding Kronos outage). Simply put, Harvey's Counsel possess a deep knowledge of wage and hour practices in this particular type of dispute, the type of evidence that typically exists, and how to value these claims.

Second, through robust informal written discovery and the mediation, Harvey's Counsel

have the information necessary to evaluate the merits of Harvey's claims, including Community Health's arguments and legal authority as to why Community Health believes it did not violate the FLSA or Indiana law.

And third, Harvey's Counsel have obtained an excellent recovery on behalf of the putative class, which includes monetary relief not only for those individuals who were Net-Underpaid during the Kronos Outage, but also for those who were Net-Neutral and Net-Overpaid. Moreover, the settlement includes Community Health's forgiveness of any overpayments to class members, a value of $8,500,000 alone. This factor is satisfied and weighs in favor of approval.

### 3. *The settlement was negotiated at arm's length.*

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e) Advisory Committee Notes. Here, this factor is satisfied because the settlement was the product of litigation and arm's-length negotiations during mediation. As noted above, on December 5, 2022, after Community Health produced a significant amount of data and other information regarding the Kronos outage and Community Health's reconciliation process, the Parties participated in a full-day mediation with Carole Katz, a highly regarded mediator with significant experience in class and collective action labor and employment wage and hour litigation. The Parties were able to reach a settlement at the mediation after a full day of negotiations.

Following mediation, the Parties' counsel continued to negotiate the full settlement terms at arms-length, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Temp. Servs., Inc.*, 2012 WL 13008138, at *10 (D.S.C. July 31, 2012) (citing *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001)) ("The fact that negotiations were 'adversarial' and were conducted at 'arm's length' helps dispel any concern that counsel colluded in reaching agreement.").

4. **The settlement agreement treats class members equitably relative to each other.**

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. In this case, Counsel worked diligently to create an allocation formula that recognizes the differences between the class and collective regardless of the significant overlap in class membership. For those individuals who are designated as "Net-Neutral" or "Net-Over" or "Net-Under-Minimal," they shall be paid $40.00 from the net settlement amount. This amount bears a reasonable relationship to the amount each individual in these categories could hope to achieve at trial.

Each Claimant who is designated as "Net-Under" shall be paid their pro-rata share of their underpaid amount as compared to the total amount of the "Net-Under" Claimants' aggregate underpayment amount. In other words, members who would have the highest damages at trial will receive the highest settlement allocation. This factor is likely to be satisfied in favor of settlement approval.

5. **The relief provided by the settlement agreement is adequate.**

Approval of the settlement is appropriate in light of the adequacy factors: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *Adams*, 2023 WL 2197075, at *3 (citing Fed. R. Civ. P. 23(e)(2)(c)(i)-(iv)).

Under the Settlement Agreement, each class member who was net underpaid at the conclusion of the Kronos Outage will receive a pro rata share of the settlement funds based on the amount of the under payment and each class member who was net overpaid at the conclusion of

the Kronos Outage shall receive a flat payment of $40. All settlement payments issued by the Settlement Administrator shall be treated as liquidated damages and shall be reported on an IRS form 1099 as applicable.

6. ***The strength of the case compared to the amount the settlement is adequate.***

Harvey believes that the claims raised in this Action are strong, but recognizes that success is not guaranteed. With respect to the merits of Harvey's claims, Harvey believes that she will prevail in demonstrating that Class Members have not been compensated proper wages related to the Kronos Outage, and that Community Health's reconciliation process did not timely pay full and complete wages including overtime under the FLSA on the appropriate workweek basis. Community Health, however, contends that it fully complied with applicable FLSA and Indiana law requirements and believe numerous factors could preclude class-wide treatment. For example, Community Health has asserted that the Kronos Outage was an unforeseen event outside of its control, and that it timely remedied the problem and paid all wages due as soon as administratively feasible and in compliance with 29 CFR § 778.106. Nonetheless, while Community Health believes that its defenses are strong, it recognizes that there is uncertainty and that it may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute this case could be tried on a class-wide basis. Next, the Parties dispute the applicability of potential penalties, including liquidated damages. In particular, Community Health claims one of its vendors (Kronos) was the victim of the cyberattack that shut down the Kronos system and that it acted in good faith after the Kronos Outage. The Parties therefore could have litigated these issues for years, including through

discovery, trial, and appeal, with no guarantee of success for Harvey and the proposed class and collective. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this also weighs in favor of approval of the Settlement Agreement. *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

As discussed above, the proposed settlement provides a significant monetary payment to class members. At this point, Harvey and all members of the putative class who were underpaid during the Kronos Outage have been repaid any wages owed. So the settlement represents liquidated or similar-type damages for those putative class members who were underpaid. For those putative class members who were Net-Neurtral or Net-Overpaid, the settlement provides for monetary relief that likely exceeds any recovery those individuals could obtain on their own. Moreover, Community Health's forgiveness of $8,500,000 in overpayments represents a significant monetary benefit, in addition to the monetary relief each will receive.

7. *The likely complexity, length, and expense of continued litigation favor approving the settlement.*

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the Parties would need to prepare significant discovery and motion practice, and potentially for and conduct a trial with numerous witnesses, voluminous records, and several thousand class members potentially. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these

risks, further litigation could result in no recovery for Class Members or a significant judgment against Community Health. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved.

8. ***The opinion of experienced counsel is that the Court should preliminarily approve the settlement.***

The Parties are represented by experienced counsel who have extensive experience in complex and class action litigation and believe this settlement is fair, reasonable and adequate in light of the circumstances of the litigation. **Exhibit C**, Decl. of Matthew S. Parmet; **Exhibit D**, Decl. of J. Corey Asay. Counsels' conclusion should be afforded considerable weight by the Court, particularly because the settlement was reached after extensive arm's length settlement negotiations, overseen by an experienced complex civil litigation mediator, and where the Parties had a firm understanding of the factual and legal issues presented and the relative strengths and weaknesses of their respective claims and defenses.

Furthermore, the Parties have engaged in discovery, including the exchange of all relevant class data related to Harvey and the potential class members' claims involving the Kronos Outage. The Parties have exchanged more than sufficient information to appropriately evaluate settlement.

B. <u>The Settlement Class Meets the Requirements of Rule 23(a) For Settlement Purposes</u>.

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009). The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620).

1.    **The Numerosity Requirement is Clearly Met**

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable.  *See Burnett*, 2020 WL 4207787, *5 (citing Fed. R. Civ. P. 23(a)(1)). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017).

In the instant case, there are approximately 12,300 individuals that come within the class and collective definitions. As such, this Court should easily conclude that numerosity is satisfied here.

2.    **There Are Common Questions of Law and Fact to Be Decided**

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)). A common nucleus of operative fact usually is enough to satisfy the commonality requirement of Rule 23(a)(2). *See In re FedEx Ground Package Sys., Inc.*, 273 F.R.D. 424, 435 (N.D. Ind. 2008). This element can be satisfied by showing that there is "'at least one question of law or fact common to the class.'" *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D.Ill.1996) (citation omitted).

Commonality does not require that all questions of fact or law be identical as long as "the class claims arise out of the same legal or remedial theory." *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D.Ill.1992); accord, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) (affirming class certification

despite some variations: "Common nuclei of fact are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class...."); *Rosario*, 963 F.2d at 1017 (affirming class certification; "some factual variation among the class grievances will not defeat a class action" on commonality issue).

Here, Harvey contends the primary questions of law and fact central to the claims against Community Health include, but are not limited to:

      a.     Whether Community Health underpaid Harvey and the class members during the Kronos Outage;

      b.     Whether Community Health acted in good faith in response to the Kronos Outage;

      c.     Whether Community Health knew or should have known its pay practices were in violation of the FLSA, the IMWL, and IWPS;

      d.     Whether Harvey and the putative class members have sustained damages and, if so, the proper measure of damages; and

      e.     Whether Harvey and the class members were paid all wages owed at the time they were due.

These allegations demonstrate several common issues of fact as well as several shared discrete legal issues. Community Health does not agree with Harvey's assertions, but does not oppose class certification for settlement purposes only. As such, these alleged common factual and legal questions are appropriate for settlement class purposes.

      **3.**     **Harvey's Claims Are Typical of the Claims of Class Members**

To satisfy the typicality requirement Rule 23(a)(3), Harvey must show that her claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that

the interests of the class will be fairly and adequately protected in their absence. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). A named plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 103, 1018 (7th Cir. 1992); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citing H. Newberg, Class Actions § 1115(b), at 185 (1977)). However, "[a]s with commonality, the threshold requirement for typicality is 'not high.'" *Nelson v. Warner*, 336 F.R.D. 118, 123 (S.D.W. Va. 2020) (citation omitted). Typicality is met irrespective of whether the claims of particular individuals may vary in detail from one to another so long as the collective claims focus on particular policies applicable to each class member. *See Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D.Ill.1996).

Typicality is present here because Harvey alleges a common policy that the under/over payments related to the Kronos Outage are applicable to all class members. Harvey alleges that Community Health's common policies and procedures in response to the Kronos Outage caused class members, including Harvey, to not be paid timely for all time worked in violation of the FLSA, and IWPS. Accordingly, all Class Members seek the same remedy.

Harvey's claims and the Class Members' claims are not antagonistic. Harvey and all Class Members seek monetary relief based on the same causes of action and theories. Because Harvey would have to prove the same wrongful conduct as the Class to establish her own claims, the Harvey and the Class Members are similarly situated; and, thus, the claims of Harvey are typical of those of the Class. Moreover, as to commonality and typicality, for purposes of settlement only, Community Health does not oppose Harvey's contention that the allegations of wrongdoing are

common to the Class. Thus, for preliminary settlement certification purposes, commonality and typicality are satisfied.

### 4. Harvey Will Fairly and Adequately Represent the Class

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Adequacy of representation is met here. Harvey is arguing the same violation of law, based on a common course of conduct, and is seeking the same remedies, as the putative class. Harvey's claim presents no possibility of a conflict because all Settlement Class Members have a common interest in obtaining the same relief.

In addition, Harvey has retained competent counsel, experienced in complex class action litigation.  *See* Adams, 2023 WL 2197075, at \*5 (noting that plaintiff's counsel was an adequate representative because counsel was experienced, qualified, and generally able to conduct the litigation, particularly due to prior wage and hour experience). As noted above, Class Counsel are well-respected firms with significant experience in wage and hour class action litigation. Class Counsel has also demonstrated in this litigation that it understands the claims and defenses in this case and stands ready, willing, and able to devote the resources necessary to litigate this case

vigorously, as it has done already.  Also, for settlement purposes only, Community Health does not contest Class Counsels' adequacy.  Thus, for purposes of preliminary certification, adequacy is satisfied both as to counsel and the class representative.

      C.      <u>The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.</u>

In addition to meeting the class certification requirements of Rule 23(a), Harvey must satisfy the requirements of one subsection of Rule 23(b). Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter.

      1.      **Predominance**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Certification of a class under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Like commonality, individualized measures of damages will not defeat the predominance requirement. *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 380 (D.S.C. 2015). "The predominance requirement is met where common questions predominate over individual questions *as to liability*." *Id.* (citing *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 427–28 (4th Cir. 2003) (emphasis in original)); *see also* 5 *Moore's Federal Practice* § 23.23[2] (1997) ("[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.").

As explained above, Harvey asserts that the common nucleus of facts in the present case derives from the Kronos Outage, common to all Class Members, in violation of the IMWL and IWPS and the alleged other violations of the FLSA.  Based on these alleged violations of law, Harvey contends that the Settlement Class Members are entitled to the same legal remedies. Indeed, Harvey's Complaint does not raise any issues that are specific to Harvey or the individual

members of the class. For purposes of settlement only, Community Health does not contest Harvey's position. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper.

### 2.  Superiority

Rule 23(b)(3) identifies four factors to determine the superiority of the class method: (1) the interests of members of the class in individually controlling the prosecution or defense of separate claims or defenses; (2) the extent and nature of any pending litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. These factors all weigh in favor of certifying this action as a class action for settlement purposes.

First, there are no anticipated difficulties in the management of this litigation as a settlement class.  As the United States Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. 591, 620. Thus, any manageability problems that may have existed here are obviated by the Settlement.

In the settlement context, class certification criteria are easily met because the class is unified by a common interest in a reasonable recovery. *See id.* at 619. Although class action requirements must be met when certifying a settlement class, the settlement must be taken into account. *Id.*

Settlement context aside, a class action is superior here in that requiring class members to bring individual suits would be inefficient, costly and time consuming. Harvey asserts that the alternative method of resolution could be nearly 12,300 individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Community Health and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class

Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. As such, a class action may be the only feasible way for some plaintiffs to pursue their claims. *See Gunnells*, 348 F.3d at 426 ("In the absence of class certification, very few claims would be brought against [the defendant], making the adjudication of [the] matter through a class action superior to no adjudication of the matter at all. Thus, class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action; *Burnett*, 2020 WL 4207787, at *7 (finding that class treatment was superior to individual claims because "[i]t will be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs would have a difficult and costly task in seeking relatively small damages solely on an individual basis."). Additionally, here, this action is the only litigation pending concerning this controversy and no other class member has indicated they wish to control this action or their claim individually. Moreover, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation. For settlement purposes only, Community Health does not oppose Harvey's contention as to superiority.

For all of the foregoing reasons, the requirements of Rule 23 have been satisfied for purposes of this Settlement, and Harvey submits that the proposed Class should be preliminarily certified, that Harvey should be appointed as class representative, and that J. Corey Asay of Morgan & Morgan, P.A. and Matthew S. Parmet, Esq. of Parmet, P.C., should be appointed as Class Counsel.

      D.      <u>The Court Should Approve the Proposed Notice and Claim Form</u>

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. Fed. R. Civ. P. 23(e)(1)). Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *Id.* These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A Rule 23(e) settlement notice should inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002).

The proposed Notice satisfies all these elements. First, it explains the nature of the action. Second, the Notice apprises Settlement Class Members of the pendency of the settlement and informs them of material settlement terms, including the amount they would receive if the Settlement is approved. The Notice explains that Class Members who "do nothing" will be bound by the settlement and all orders and judgments. The Notice describes how to object to the settlement, informs Class Members that they will receive a share of the Settlement Amount and explains factors that will be applied to account for their precise recovery. *Burnett*, 2020 WL 4207787, at *10 ("The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.").

Here, class members are provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense. Class Members will have a reasonable amount of time, 45 days from the date the notice is mailed, to elect to opt-out or object to the settlement.

Harvey will file a Motion for Attorneys' Fees and Costs fourteen days before the Objection and Opt-out deadline or as otherwise ordered by the Court. Harvey will file a Motion for Final Approval of the Settlement Agreement after the notice process outlined in the Parties' Settlement Agreement and at least two weeks prior to the Final Approval Hearing or at such other time

ordered by the Court, so as to permit compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(d). The Parties also request the Court to set a final fairness hearing so that the notice can inform Class Members of the date and location of that hearing. To accommodate the notice period, the Parties request a date approximately 75 days after the Court's order preliminarily approving the settlement.

## IV. CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES IS LIKEWISE WARRANTED

This Settlement should likewise be preliminarily approved under the FLSA. An FLSA settlement should be approved if the terms of the settlement are a fair resolution of a *bona fide* dispute between the Parties. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). "To determine the fairness of an FLSA settlement, the Court must consider 'whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Adams*, WL 2197075, at *4 (citations and quotation omitted).

As set forth above, there are numerous *bona fide* disputes in this case in the absence of settlement, including disputes on the merits, disputes as to damages, including whether any liquidated damages are due, and disputes regarding the viability of conditional certification and decertification under the FLSA. Further, as outlined above, the Parties have engaged in a significant information exchange and counsel for both sides have sufficient information to evaluate the settlement. Further, both sides are represented by experienced counsel and there is the absence of fraud or collusion. Other courts have also approved the method of FLSA release proposed in this case – where Settlement Collective Members release their FLSA and related claims only upon signing, cashing, or depositing their settlement checks. *See, e.g., Adams*, 2023 WL 2197075, at *4 (approving same).

For purposes of FLSA preliminary settlement approval, Harvey is further "similarly situated" to the Settlement Collective as she alleges the same claim and the same injury against Community Health – the alleged failure to timely pay wages under the FLSA during the Kronos Outage. *See Burkholder v. City of Ft. Wayne*, 75 F. Supp. 990, 994 (N.D. Ind. 2010) (finding plaintiffs were similarly situated when their claims arose from similar factual settings). Accordingly, Harvey seeks permission to send the Notice to Collective Settlement Members informing them about the proposed settlement.

## V.       CONCLUSION

The proposed Settlement Agreement is fair, adequate, and reasonable. It will result in considerable payments to Class and Collective Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation. For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed Settlement Agreement, sign the proposed Order, approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class and Collective Action Settlement, and, to accommodate the Notice period, set a date for a final approval hearing approximately 75 days after the date of preliminary approval.

Date:   March 24, 2023                         Respectfully submitted,

                                                */s/ Matthew S. Parmet*
                                         By: _____
                                                **Matthew S. Parmet**
                                                TX Bar # 24069719
                                         **PARMET PC**
                                         2 Greenway Plaza, Ste. 250
                                         Houston, TX 77046
                                         phone  713 999 5228
                                         matt@parmet.law

**J. Corey Asay**
IN Bar # 28453-49
Morgan & Morgan
333 W. Vine Street, Suite 1200
Lexington, KY 40507
Tel:     859 286 8368
Fax:     859 286 8384
Email:  CAsay@forthepeople.com

**Attorneys for Plaintiffs**