UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BROOKE HARVEY, individually and on behalf of all others similarly situated, <br><br> v. <br><br> COMMUNITY HEALTH NETWORK, INC. | Case No. 1:22-cv-00659-TWP-MJD <br> FLSA Collective Action <br> FED. R. CIV. P. 23 Class Action <br><br> Chief Judge Tanya Walton Pratt <br><br> Magistrate Judge Mark J. Dinsmore |

HARVEY'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

A.    SUMMARY

　　　　The Parties reached a settlement of all claims made in this lawsuit, brought under both the Fair Labor Standards Act (FLSA) and Indiana law. The settlement is made on both a class basis, pursuant to Federal Rule of Civil Procedure 23, and a collective basis, under the FLSA. The settlement represents the culmination of Harvey and her counsel's investigation, litigation, and negotiation. It completely resolves the claims of Harvey and the rest of the proposed class and collective at issue in this lawsuit. Community Health has defended the claims in this lawsuit and continues to deny any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue. Given the inherent risks of litigation and trial, therefore, the settlement is fair and reasonable, is in the best interest of Harvey and the proposed class and collective, and will provide meaningful relief to Harvey and similarly situated employees of Community Health.

　　　　For these reasons, Harvey requests the Court approve the Parties' Settlement Agreement.

B.    BACKGROUND

　　　　This is a hybrid wage and hour collective action under the FLSA and class action under the Indiana Wage Payment Statute (IWPS), I.C. § 22-2-5 *et seq.*. ECF No. 27. To track time, calculate overtime and process payroll for its non-exempt employees, Community Health used Kronos, a cloud-based timekeeping and payroll system. On or around December 11, 2021, the

Kronos cloud system became inoperable due to a reported cyberattack of the Kronos system. As a result of the Kronos outage, Community Health was unable to access any timekeeping or payroll data stored or entered into its Kronos system. The outage affected four bi-weekly pay periods, from December 12, 2021, to January 25, 2022. During that time, Harvey alleges that some employees were not timely paid all wages due to them and that, even after the Kronos system was restored, Community Health "netted" the amounts owed to employees during the outage, which resulted in errant calculations of the amounts due to, or overpaid to, employees.

Community Health asserts that it acted in good faith at all times following the Kronos Outage, including the timely institution of back-up manual and electronic timekeeping processes, and that after the Kronos system was restored, it reconciled and paid all unpaid wages and overtime compensation related to the five bi-weekly pay periods at issue by April 22, 2022. As a result of this reconciliation process, Community Health determined that during the Kronos outage, it underpaid wages to 7,680 non-exempt employees in the aggregate amount of $6.1 million and overpaid wages to 4,620 non-exempt employees in the aggregate amount of $1.2 million. In addition, a then-undetermined number of non-exempt employees received payments that Community Health claims, in net, were correct, but the payments may have been untimely or inaccurate.[1] Following the conclusion of the Kronos Outage, Community Health alleges it took steps to ensure all underpaid employees received any outstanding back wages, and following its reconciliation process, it then issued remaining reconciliation payments to affected employees on April 22, 2022.

---

[1] The settlement agreement covers net-overpaid, net-underpaid, and net-neutral employees. The latter will each receive a $40 payment. The brief in support of the unopposed motion for preliminary approval noted the number of employees who were net-overpaid and net-underpaid but inadvertently omitted the number of employees who were net-neutral. *See* ECF No. 85, at *3. This brief includes those employees as well.

On December 5, 2022, after Community Health produced a significant amount of data and other information regarding the Kronos outage and Community Health's reconciliation process, the Parties participated in a full-day mediation with Carole Katz, a highly regarded mediator with significant experience in class and collective action labor and employment wage and hour litigation. The Parties were able to reach a settlement at the mediation after a full day of negotiations. Since that time, after substantial further work and negotiations on the settlement terms, the Parties were able to reach a final Settlement Agreement.

The Court entered an order preliminarily approving the settlement on May 3, 2023. ECF No. 86. Notice was then sent to the 16,454 class members on June 14, 2023. During the course of the notification process, only 74 packets were nondeliverable, only 20 individuals excluded themselves from the settlement, and only 1 individual filed an objection.

C.    SUMMARY OF THE SETTLEMENT

The proposed Settlement Agreement is attached as Exhibit A.[2]

1.    Monetary terms of the settlement

The Settlement Agreement provides for a common fund settlement of a total value of approximately $5,190,000.00, excluding the cost of notice and claims administration, which Community Health is paying separately from, and in addition to, the Settlement Fund.[3] Also separately from, and in addition, to, the Settlement Fund, Community Health agreed to pay the cost of mediation. The common fund includes $3,990,000.00 in new funds, which is comprised of

---

[2] Exhibit 2 to the Settlement Agreement, which contains a listing of potential class members, has not been contemporaneously filed because the individual identities are not necessary to the determination of the Motion. Exhibit 3 to the Settlement Agreement, which contains an estimate of each individual's potential recovery, has not been contemporaneously filed because their individual allocations are not necessary to the determination of the Motion, since the underlying methodology has been provided to the Court.

[3] The cost of administration is $83,950.00. Ex. D, Decl. of Nicole Bench.

payments to Settlement Class and Collective Members, attorney's fees and litigation expenses, and a service award to Harvey; and, in addition to the cash funds, the common fund also includes approximately $1,200,000.00 in recoupment of alleged overpayments made by Community Health to class members during the course of the Kronos outage.

As part of the settlement, Harvey seeks attorneys' fees not to exceed one-third of the new settlement funds to be paid under the agreement, which is only 25.6% of the common fund value obtained for the class, as well as counsel's reasonable and necessary costs incurred in prosecuting this action. Harvey also seeks a service award $5,000.00 in consideration for her work on behalf of the class.

Under the settlement, all class members' payments will be characterized as liquidated damages for tax withholding and reporting purposes.

### 2. Allocation and distribution of settlement

There are approximately 16,454 Putative Rule 23 Class Members, who are also Putative FLSA Collective Members.[4] The settlement establishes a Rule 23 class and FLSA collective: The Rule 23 Class is:

> those current or former hourly or salaried employees of Releasees who were nonexempt under the FLSA and worked for Releasees in Indiana at any time during the Kronos Outage.

And the putative FLSA Collective is:[5]

> those current or former hourly or salaried employees of Releasees who were nonexempt under the FLSA and worked for Releasees in the United States at any time during the Kronos Outage.

---

[4] All putative FLSA collective members were employed in Indiana.

[5] To release their FLSA claims, Putative Rule 23 Class members must sign, cash, or deposit their settlement check as set forth in the Settlement Agreement, thereby opting-into this matter.

The settlement provides each class member with a proportional recovery based on their time and records. The final settlement amount will be allocated to each Settlement Class Member based solely on the estimated wages that were delayed as a result of the Kronos outage. Each class or collective member will receive a minimum of $40. No differential treatment shall be made for any class or collective member.

3.      **Limited scope of release as to wage-and-hour claims.**

In consideration for their payments, Harvey and the class and collective members will release **only** their wage-and-hour claims under federal, state, and local law. They will not release of any other employment-related claims or provide a general release. Class members will release the wage-and-hour claims alleged in the complaint only.

D.      STANDARD OF REVIEW FOR FINAL APPROVAL

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Although class settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate, and not a product of collusion. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). In determining whether a class settlement meets that standard, the Seventh Circuit has directed courts to assess: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2005); *Isby*, 75 F.3d at 1199. The determination that a settlement is fair is left to the sound discretion of the trial court. *Armstrong v. Bd. of Sch. Dist.*, 616 F.2d 305, 313-14 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Each of these factors warrants final approval of the Settlement.

E.    ARGUMENT & AUTHORITIES

1.    **The settlement class meets the requirements of Rule 23(a) for settlement purposes.**

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620).

1.1.    **Numerosity**

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable. *See Burnett*, 2020 WL 4207787, *5 (citing Fed. R. Civ. P. 23(a)(1)). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017).

In this case, there were 16,454 individuals within the class definition. As such, this Court should easily conclude that numerosity is satisfied here.

1.2.    **Commonality**

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800

F.3d 360, 374 (7th Cir. 2015)). A common nucleus of operative fact usually is enough to satisfy the commonality requirement of Rule 23(a)(2). *See In re FedEx Ground Package Sys., Inc.*, 273 F.R.D. 424, 435 (N.D. Ind. 2008). This element can be satisfied by showing that there is "'at least one question of law or fact common to the class.'" *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D.Ill.1996) (citation omitted).

Commonality does not require that all questions of fact or law be identical as long as "the class claims arise out of the same legal or remedial theory." *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D.Ill.1992); accord, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) (affirming class certification despite some variations: "Common nuclei of fact are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class...."); *Rosario*, 963 F.2d at 1017 (affirming class certification; "some factual variation among the class grievances will not defeat a class action" on commonality issue).

Here, there are many questions of law and fact central to the claims of Harvey and the class, including:

a. Whether Community Health made allegedly late payments of wages to Harvey and the class members;

b. Whether Community Health "netted" wages owed to Harvey and the class members throughout the Kronos outage;

c. Whether Community Health's pay practices related to the Kronos outage violated the FLSA and IWPS; and

d. Whether Community Health acted in good faith within the meaning of the FLSA.

These allegations demonstrate several common issues of fact, as well as several shared discrete legal issues. These common factual and legal questions are appropriate for settlement class purposes.

### 1.3.    Typicality

To satisfy the typicality requirement Rule 23(a)(3), Harvey must show that her claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). A named plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 103, 1018 (7th Cir. 1992); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citing H. Newberg, Class Actions § 1115(b), at 185 (1977)). However, "[a]s with commonality, the threshold requirement for typicality is 'not high.'" *Nelson v. Warner*, 336 F.R.D. 118, 123 (S.D.W. Va. 2020) (citation omitted). Typicality is met irrespective of whether the claims of particular individuals may vary in detail from one to another so long as the collective claims focus on particular policies applicable to each class member. *See Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D.Ill.1996).

Typicality is present here because Harvey alleges a common policy that the under- and over-payments related to the Kronos outage are applicable to all class members. Harvey alleges that Community Health's common policies and procedures in response to the Kronos outage caused class members, including Harvey, to not be paid timely for all time worked in violation of the FLSA, and IWPS. Accordingly, all class members seek the same remedy.

Harvey's claims and the class members' claims are not antagonistic. Harvey and all class members seek monetary relief based on the same causes of action and theories. Because Harvey

would have to prove the same wrongful conduct as the class to establish her own claims, the Harvey and the class members are similarly situated; and, thus, the claims of Harvey are typical of those of the class. Thus, typicality is satisfied.

### 1.4.    Adequacy of representation

Rule 23(a) requires that the class representative will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). To satisfy the adequacy of representation requirement, the representative must "fairly and adequately protect the interests of the class." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Adequacy of representation is met here. Harvey is arguing the same violation of law, based on a common course of conduct, and is seeking the same remedies, as the putative class. Harvey's claim presents no possibility of a conflict because all class members have a common interest in obtaining the same relief.

In addition, Harvey has retained competent counsel, experienced in complex class action litigation. *See Adams*, 2023 WL 2197075, at *5 (noting that plaintiff's counsel was an adequate representative because counsel was experienced, qualified, and generally able to conduct the litigation, particularly due to prior wage and hour experience). Class Counsel are well-respected firms with significant experience in large-scall wage-and-hour class and collective action litigation. Class Counsel has also demonstrated in this litigation that it understands the claims and defenses in this case and is ready, willing, and able to devote the resources necessary to litigate

this case vigorously, as it has done already. Thus, for purposes of preliminary certification, adequacy is satisfied both as to counsel and the class representative.

### 1.5.    Rule 23(b)

If all the Rule 23(a) requirements have been met, the proposed class must still meet at least one of the three provisions of Rule 23(b).

To simplify the analysis for the Court, however, in a wage-and-hour case such as this one, the Court can focus on the third provision—that is, whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b).

This prerequisite is met "where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008), *aff'd sub nom. Kamar v. RadioShack Corp.*, 375 F.App'x 734 (9th Cir. 2010) (citing *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 527 F.Supp.2d 1053, 1071 (N.D. Cal. 2007)). Even so, "the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *See, e.g., Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, at *9-10 (N.D. Cal. 2007).

Here, the analysis is simple because Harvey's claims—and Community Health's alleged acts and omissions at issue—spring from the uniform policies implemented in the wake of the Kronos outage. Harvey has made no claim, and Community Health has alleged no defense, that arises from any individualized or segmented policies.

2.    Final approval should be granted.

2.1.    The strength of the case compared to the amount the settlement.

Harvey believes that the claims raised in this action are strong but recognizes that success is not guaranteed. With respect to the merits of Harvey's claims, Harvey believes that she will prevail in demonstrating that Class Members have not been compensated proper wages related to the Kronos Outage, and that Community Health's reconciliation process did not timely pay all wages owed to her and class members, including overtime under the FLSA. At the same time, Community Health contends it fully complied with applicable FLSA and Indiana law requirements and that numerous factors would preclude class-wide treatment. For example, Community Health asserts the Kronos outage was an unforeseeable event outside of its control, and that it timely remedied the problem and paid all wages due as soon as administratively feasible, in compliance with 29 CFR § 778.106.

Aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute this case could be tried on a class-wide basis, which would impact the valuation of the case as a whole. Next, the Parties dispute the applicability of potential penalties, including liquidated damages under the FLSA. In particular, Community Health claims its vendor (Kronos) was the victim of the cyberattack that shut down the Kronos system and that it acted in good faith after the Kronos outage began. The Parties therefore could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Harvey and the proposed class and collective. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this also weighs in favor of approval of the Settlement

Agreement. *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Under the Settlement Agreement, each class member who was net underpaid at the conclusion of the Kronos outage will receive a pro rata share of the settlement funds based on the amount of the underpayment, and each class member who was net overpaid at the conclusion of the Kronos outage shall receive a flat payment of $40. All payments will be a minimum of $40. The settlement payments issued by the Settlement Administrator shall be treated as liquidated damages and will not be subject to withholding for tax purposes.

The proposed settlement thus provides a significant monetary payment to class members. At this point, Harvey and all members of the putative class who were underpaid during the Kronos Outage have been repaid any wages owed. So the settlement represents liquidated or similar-type damages for those putative class members who were underpaid. For those putative class members who were underpaid a small amount or even overpaid, the settlement still provides for monetary relief and forgiveness of $1,200,000 in overpayments[6] that likely exceeds any recovery those individuals could obtain on their own.

### 2.2.    The likely complexity, length, and expense of continued litigation.

The issues in this case are complex and, if not for settlement, would be vigorously contested, resulting in significant time and expense to Plaintiffs if the litigation were to continue. Barring a settlement, the parties would need to prepare significant discovery and motion practice to prepare this matter for trial. They would then potentially conduct a trial with numerous

---

[6] In some places, Harvey's Motion for Preliminary Approval inadvertently stated the forgiveness amount was $8,500,000. In others, the correct figure of $1,200,000 was disclosed. This mistake was not material to the class notice process, because it was not used as part of the notice to potential class members.

witnesses, voluminous records, and, perhaps, 16,454 class members. Any final judgment could be appealed, extending the duration of the litigation. Given these risks, further litigation could result in no recovery for class members or a lesser judgment against Community Health. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future outcome.

### 2.3.    Opposition to the settlement.

A total of 16,454 potential class members were notified of the pending settlement. Of all those individuals, only 20 individuals (0.12% of the class) opted out. And a single objection was received, which represents an infinitesimal **0.006%** of the class.

"It is settled that [a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." In re Checking Acct. Overdraft Litig., No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *15 (S.D. Fla. Aug. 10, 2020), aff'd No. 20-13367, 2022 WL 472057 (11th Cir. Feb. 16, 2022) (internal quotation omitted); accord In re Cendant Corp. Litig., 264 F.3d 201, 235 (3d Cir.2001) ("The District Court correctly found that [the small number of objectors] weighed strongly in favor of the Settlement.")."In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement." Mangone v. First USA Bank, 206 F.R.D. 222, 227 (S.D. Ill. 2001). Accordingly, Courts routinely grant final approval based on similar, and even greater, relative number of objectors. E.g., In re: Johnson & Johnson Aerosol Sunscreen Mktg., Sales Practices & Products Liability Litig., No. 0:21-MD-3015, 2023 WL 2284684, at *10 (S.D. Fla. Feb. 28, 2023) (granting class action settlement and rejecting the lone objector out of over 209,000 class members); In re TikTok, Inc., Consumer Priv. Litig., 617 F. Supp. 3d 904, 937 (N.D. Ill. 2022) ("With over 1.2 million claims filed and a class that includes approximately one in four Americans, only

four class members have filed objections to the settlement, and only 4,068 have requested to be excluded. This level of opposition is remarkably low[.]"), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618, at *21 (N.D. Ala. Aug. 9, 2022) (approving settlement with 123 objectors out of over 100 million class members); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) (finding that, in case with a class size of 10 million, the fact that only twenty class members filed objections supported reasonableness of settlement, and collecting cases); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement, and noting that objectors represent "little more than 10 percent" of the class). "This miniscule number of objectors in comparison to the class size is entitled to significant weight in the final approval analysis." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020) (referring to 388 objectors out of a class of 147 million individuals and 15 million claims), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021). "The relative dearth of opposition to the settlement … weighs in favor of approval….." *In re TikTok*, 617 F.Supp.3d at 937.

Even then, the lone objection does not relate to the fairness and reasonableness of the settlement, but mounts a merits-based defense of Community Health that is not relevant approval of the settlement. The question before the Court is "whether the settlement is fundamentally fair to the class, not to reexamine the underlying merits of the litigation." *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1258 (C.D. Cal. 2016) (internal quotation omitted). "Further, the objections are irrelevant because they are in essence objections on behalf of [the defendant] and not the class and the court is a fiduciary to absent class members, not Defendant." *Id.* (cleaned up)

In all, the settlement has the overwhelming support of the class.

### 2.4. The opinion of competent counsel

That this Settlement in the best interest of Harvey and the class is an opinion shared by Plaintiff's counsel. Harvey's counsel has extensive experience with complex wage and hour class and collective litigation generally, and with claims related to the Kronos outage specifically. *Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023) (granting final approval of settlement claims for FLSA nationwide collective action and Rule 23 class action claims related to Kronos outage); *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023) (granting final approval of settlement claims for FLSA nationwide collective action and Rule 23 class action claims, including claims related to Kronos outage); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) (approving settlement of FLSA collective action related to Kronos outage); *Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (same); *Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023) (same); *Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) (same); *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 22 (W.D.N.C. Jun. 27, 2023) (granting preliminary approval of settlement of overtime claims for FLSA collective action and Rule 23 class action under North Carolina state law, including attorneys' fees as percentage of common fund). Simply put, Harvey's counsel possess a deep knowledge of wage and hour practices in this particular type of dispute, the type of evidence that typically exists, and how to value these claims.

Because Plaintiffs are represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Armstrong v. Bd. of Sch. Directors of Cty. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980) , *overruled on different grounds*,

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Plaintiffs' counsel's experience in, and knowledge of, wage-and-hour cases has been noted by various courts. *Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (S.D.N.Y. Dec. 2, 2022) (acknowledging wage-and-hour plaintiffs' counsel, including Morgan & Morgan and Parmet PC, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation"); *Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738, at *4 (W.D. La. Feb. 25, 2022) ("Plaintiffs' counsel [including Mr. Parmet] is well known to the Court and has prosecuted many such [wage-and-hour] claims with similar professionalism and skill."), *adopted by* 2022 WL 741698 (W.D. La. Mar. 10, 2022); *Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819, at *2 (W.D. La. Feb. 13, 2019) ("This case has been litigated by competent lawyers on each side who enjoy great respect in their field from both sides of the aisle. Counsel for Plaintiff [including Mr. Parmet] has appeared multiple times in this Court with success on most, if not all, occasions."), *adopted by* 2019 WL 1446481 (W.D. La. Mar. 29, 2019).

Plaintiff's counsel agrees the settlement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Harvey, individually and on behalf of the class members, in light of the procedural posture of the case, the litigation risks, and the litigation costs to Harvey and the potential class members. For these reasons, Plaintiff's counsel believes the Court should finally approve the settlement.

### 2.5. The stage of litigation and the discovery completed

Although this case was resolved relatively early in litigation, Harvey and her counsel performed a substantial amount of work to investigate the claims, initiate suit, conduct discovery, advocate for early resolution, establish a reasonable settlement value, prepare for mediation and

resolve the case, and ready the documents for approval. The work undertaken by Harvey and class counsel included:

- Review of the background of the Kronos outage and its impact on Community Health;

- Investigation of Community Health and their structure, management, and ownership;

- Review of Department of Labor database and records;

- Review of court records for similar or related cases involving Community Health, its management, ownership, and related entities;

- Review of court records for similar or related cases involving Community Health and its related corporate entities;

- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;

- Drafting, filing, and serving Plaintiff's original complaint;

- Drafting and sending Plaintiff's disclosures and informal discovery;

- Reviewing Plaintiff's and the opt-in Plaintiffs documents and production;

- Interviewing Plaintiff and potential opt-ins;

- Reviewing Community Health's production, including payroll and time documents and data;

- Analyzing and processing data for Plaintiff's payroll, including creating a damage model for the data;

- Attending a full-day mediation;

- Attending a full day mediation with Carole Katz; and

- Negotiating and finalizing the Parties' Settlement Agreement and approval documents

By the time of mediation and settlement, based on the time and pay data provided by Community Health, along with Plaintiff's counsel's own research, Harvey and class counsel had more than sufficient information with which to make an informed decision regarding the

resolution of this case. Indeed, based upon Plaintiffs' counsel's experience, the pay data is the key discovery necessary to complete valuation of this matter—and very little other data is important in a case like this. In all, Plaintiff engaged in significant work and obtained all discovery and data necessary to evaluate the settlement.

3.    Harvey should be allowed a reasonable service award.

"Judges … have not hesitated to assure that those undertaking class litigation are not penalized for placing a class's interest above their own." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Incentive awards "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action[.]" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. Mar 24, 2011) ("The Court has broad discretion to award payment to class representatives for their efforts to benefit the class.").

Courts routinely approve incentive awards to compensate class representatives for the services they provided and the risks they incurred during the course of the class action litigation. *See, e.g., Caligiuri v. Symantec Corp.*, 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 incentive award to each named plaintiff); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 incentive award to each named plaintiff). Incentive awards are intended to reflect the substantial service and risk provided by a lead plaintiff, and can often be substantial. *See, e.g., Sanders v. MPRI, Inc.*, No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving incentive awards to helpful plaintiffs of up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving incentive award of $10,000 as being "well within the range of reasonable incentive

awards"); *In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $50,000); *Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. 2007) (approving $25,000 incentive awards to each named plaintiff), *affirmed*, 331 Fed.Appx. 452 (9th Cir. 2009); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 incentive award to lead plaintiff). A service award is particularly appropriate where, as here, the "average claim amount for the class as a whole" is not "sufficient to compensate class representatives for their time and efforts spent litigating this action and their service to the class." *Hall*, 274 F.R.D. at 173.

The terms of the settlement provide for Harvey, the class representative, to receive a modest service award of $5,000 to be paid from the common fund for her role in initiating the investigation and litigation of this matter, serving as class representative, responding to counsel's questions, providing documents, participating in settlement discussions, reviewing the settlement, and otherwise assisting counsel.

The incentive award is justified by the work done, and the risks taken, by Harvey. Harvey retained counsel and, even before suit was filed, remained in regular contact with counsel. Ex. B, Parmet decl., at ¶ 26. She responded to inquiries from counsel and shared information about his work throughout the litigation. *Id.* She was involved in settlement discussion, including remaining on call for a full day mediation, and reviewed the settlement agreement in detail with counsel prior to executing it. *Id.*

For her work on behalf of the class, Harvey's service award should be approved.

4.    **Plaintiff's counsel is entitled to recover fees and expenses.**

    4.1.    **Plaintiffs' requested attorneys' fees are reasonable.**

In addition to the amounts allocated to the Plaintiffs under the settlement, the Court also evaluates the reasonableness of the attorneys' fees and costs under the settlement. Here, the amounts are fair and reasonable, and the Court is due to approve them as well.

"[T]he award of fees and costs to a prevailing plaintiff is mandatory under the FLSA." *Rogers v. City of Virginia Beach*, 182 F.3d 909 (4th Cir. 1999).

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

*Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994).

To determine if the fee is appropriate, the Seventh Circuit follows the ex ante approach. *Dubinski v. Sentry Ins. a Mut. Co.*, No. 114CV00551TWPDKL, 2015 WL 13640103, at *3 (S.D. Ind. May 28, 2015) (Pratt, J.); *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012) (Pratt, J.). This approach asks the Court to assign fees that "mimic a hypothetical ex ante bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011). "'[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services.'" *King v. Trek Travel, LLC*, No. 18-cv-345-WMC, 2019 WL 6790398, at *3 (W.D. Wis. Dec. 12, 2019) (quoting *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013)). Courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time" the litigation began. *In re Synthroid Mktg. Litig.*, 264

F.3d 712, 718 (7th Cir. 2001) ("Synthroid I"). When determining market price, courts should look to the contracts entered into by the parties and class counsel in similar cases, information from other cases, and any applicable auctions for the position of lead counsel. *Taubenfield v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Additional factors include the quality of the attorneys' performances, the amount of work necessary to resolve litigation, and the stakes in the case. *Synthroid I*, 264 F.3d at 721.[7]

"The Seventh Circuit has recognized that 'most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis' and that the 'typical contingent fee is between 33 and 40 percent.'" *Id.* (quoting *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)); *accord Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (observing the "customary contingency" in the Fifth Circuit is within the range of 35% to 40%). A 1/3 contingency fee is thus a "normal rate of compensation" for contingency fee agreements in class action cases. *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) (internal quotation omitted); *see also Dubinski*, 2015 WL 13640103, at *3 (S.D. Ind. May 28, 2015) (collecting cases and awarding 33 1/3% fee); *Heekin*, 2012 WL 5878032, at *3 (S.D. Ind. Nov. 20, 2012) (collecting cases and awarding 33 1/3% ($30 million) fee); *Williams v. Rohm & Haas Pension Plan*, No. 4:04-cv-0078-SEB-WGH, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010) (Barker, J.) (awarding one-third of recovery ($43.5 million) as attorneys' fees); *In re Ready–Mixed Concrete Antitrust Litig.*, No. 05–00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (Barker, J.) (33.3% of the common fund). Indeed, some cases exceed a 1/3

---

[7] Plaintiffs' counsel's performance, the work necessary to resolve the case, and the stakes in the litigation have been discussed previously in this motion. And there has been no contest for lead counsel. For these reasons, these factors will not be addressed in this section.

fee. *E.g., In re Guidant Corp. ERISA Litig.*, No. 05-cv-1009, slip op. at 2 (S.D. Ind. Sept. 10, 2010) (McKinney, J.) (38% of the common fund).

Like other causes of action, continent attorneys' fees in FLSA matters "typically" range between 33% and 40%. *King*, 2019 WL 6790398, at \*3. And Courts in this Circuit have approved attorneys' fees representing event higher percentages of recovery. *See, e.g., Weiss v. Youtos*, No. 20-cv-990-SLC, 2021 WL 2383210, at \*2 (W.D. Wis. Jun. 9, 2021) ("Counsel's 45% contingency arrangement with Weiss is consistent with attorney fees approved in other FLSA settlements in this circuit.").

Here, the Parties' agreement calls for, and Plaintiff requests, an attorneys' fee award of $1,330,000, which amounts to 25.6% of the total value of the settlement proposed here ($3,990,000 in new funds and approximately $1,200,00 in forgiven overpayments),[8] far less than the norm for a common fund settlement of this size. Thus, the requested fees are **actually significantly less than** Seventh Circuit precedent. This amount also represents only 64% of the amount Plaintiffs' counsel would be entitled to seek under Plaintiff's retainer agreement with Plaintiff. Further, the requested fees were disclosed to the class members during the notice

---

[8] "When using the percentage-of-the-fund approach, courts compensate class counsel for their work in extracting non-cash relief from the defendant in a variety of ways. When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at \*13 (S.D. Fla. Aug. 5, 2013); *see also Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012) (rejecting argument that value of injunctive relief should not also be considered in addition to cash for purposes of determining class counsel's fees); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained … courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method …."); American Law Institute, Principles of the Law of Aggregate Litigation, § 3.13(b) (2010) ("[A] percentage of the fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement").

process, and no class members objected to the fees. For these reasons, Plaintiffs' reasonable and necessary fees should be approved.

### 4.2. Reimbursement of out-of-pocket costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Plaintiffs' counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case.

| Cost | Amount |
|---|---|
| Filing Fee | $ 402.00 |
| Service on Defendant | $ 130.00 |
| Admission/PHV Fees | $ 538.00 |
| Legal research, background checks, e-signatures | $ 250.00 |
| Copies | $ 7.50 |
| Postage | $ 8.98 |
| Travel and Incidental | $ 1,489.84 |
| Certificates of Good Standing | $ 20.00 |
| **TOTAL** | **$ 2,846.32** |

### 5. The settlement meets the standard for approval under the FLSA.

The Seventh Circuit has not ruled whether settlement agreements under the FLSA require court approval, but district courts in the Circuit routinely review such agreements for court approval. *See Hoaglan v. Grede Holdings LLC*, No. 20-CV-425-PP, 2022 WL 2703854, at *2 (E.D. Wis. July 12, 2022) (collecting cases). "'If the proposed settlement reflects a reasonable compromise

over contested issues, the court should approve the settlement.'" *Id.* (quoting *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016)).

"'Normally, a settlement is approved where it is the result of 'contentious arm's-length negotiations, which were undertaken in good faith by counsel ... and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" *Jimenez v. Illini Precast LLC*, No. 19-cv-1623-JPS, 2023 WL 1777528, at *3 (E.D. Wis. Feb. 6, 2023) (quoting *Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990, 995 (N.D. Ind. 2010)).

Although the class-action provisions of Federal Rule of Civil Procedure 23 do not apply to FLSA collective actions, courts have looked to the six factors used in class actions for evaluating FLSA settlement proposals: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including collective counsel, the claims representative, and the putative collective members. *Hoaglan v. Grede Holdings LLC*, No. 20-CV-425-PP, 2022 WL 2703854, at *2 (E.D. Wis. July 12, 2022). Because these factors overlap with those considered in a Rule 23 class settlement approval, the Court's finding that approval of the Rule 23 settlement is appropriate is sufficient to approve the settlement of the FLSA claims in this lawsuit.

F.    CONCLUSION

For these reasons, the Court should finally approve the settlement agreement reached by the Parties, as fair, reasonable, and adequate.

Respectfully submitted,

/s/ Matthew S. Parmet

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
PARMET PC
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Andrew R. Frisch**
FL Bar # 027777
(*admitted pro hac vice*)
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
Email: AFrisch@forthepeople.com

**C. Ryan Morgan, Esq.**
FL Bar # 0015527
(*admitted pro hac vice*)
MORGAN & MORGAN, P.A.
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:     (407) 420-1414
Email:         rmorgan@forthepeople.com

**Attorneys for Plaintiffs and the Class**

CERTIFICATE OF CONFERENCE

Prior to filing this Motion, I conferred with Defendant's counsel, who confirmed that Defendant is unopposed to the relief sought herein.

/s/ Matthew S. Parmet

_____

Matthew S. Parmet